110 So.2d 308

SOUTHERN ELECTRIC GENERATING COMPANY

v.

J. H. LEIBACHER, Sr.

7 Div. 394.

Supreme Court of Alabama.

March 12, 1959.

Karl C. Harrison, Columbiana, and Martin & Blakey, John Bingham and Harold A. Bowron, Jr., Birmingham, for appellant.

Frank Bainbridge, Birmingham, and Handy Ellis, Columbiana, for appellee.

LAWSON, Justice.

This is a condemnation proceeding brought by Southern Electric Generating Company, a corporation, in the Probate Court of Shelby County against J. H. Leibacher, Sr., and other property owners to condemn certain lands to be used in the construction and operation of a steam electric generating plant. As to Leibacher's land, the award of the commissioners in the probate court was $4,000. An order of condemnation was entered accordingly. Leibacher appealed to the Circuit Court of Shelby County and requested trial by a jury. The jury returned a verdict, fixing the amount of Leibacher's compensation at $11,000. Judgment followed the verdict. After a judgment was entered overruling its motion for a new trial, Southern Electric Generating Company, sometimes referred to hereinafter as Southern Electric, appealed to this court.

In the circuit court Leibacher denied that Southern Electric had the right to condemn his property and took the position that the determination of that question was for the jury.

On an appeal to the circuit court from an order of condemnation entered in the probate court the trial is de novo. § 17, Title 19, Code of 1940. The condemnor's right to condemn as well as the amount of damages and compensation may be put in issue in the circuit court. The right to condemn is to be determined by the court without the aid of a jury, while the amount of damages and compensation to be assessed is for the jury, where a jury trial is properly requested. § 235, Constitution of 1901; City of Birmingham v. Brown, 241 Ala. 203, 2 So.2d 305; Alabama Power Co. v. Thompson, 250 Ala. 7, 32 So.2d 795, 9 A.L.R.2d 974; Moore v. City of Mobile, 248 Ala. 436, 28 So.2d 203.

The trial court correctly ruled that the question as to Southern Electric's right to condemn was for the court's determina-

tion and that Southern Electric had the right to condemn the property here involved. Those rulings are not challenged here by cross appeal or cross-assignments of error.

■ Over objection the trial court required Southern Electric to present its proof as to its right to condemn in the presence of the jury. This action of the trial court is assigned as error.

■ Southern Electric's right to condemn was a preliminary question which the trial court should have determined outside of the presence of the jury. There was no such preliminary determination and the evidence as to Southern Electric's right to condemn was presented to the jury along with the evidence bearing on the amount of compensation to which Leibacher would be entitled. After the conclusion of the presentation of the evidence relating to both issues, the trial court instructed the jury that the court had concluded that Southern Electric was entitled to condemn and then instructed the jury that the amount of compensation to be awarded was for its determination.

The Leibacher tract here involved contains 44 acres of unimproved, woodland situated on the outskirts of Wilsonville in Shelby County. There is only one house on the property. Leibacher built the house and occupies it from time to time. He does not reside on the property. Yellow Leaf Creek, a stream which seems to be of considerable size, runs along or through some of the land. As far as this record discloses the 44 acre tract is all of the land owned by Leibacher.

■ Leibacher was entitled to the fair or reasonable market value of his land as of the day of its taking based on the use to which it could be most advantageously put. Blount County v. McPherson, Ala., 105 So. 2d 117. For present purposes the parties agreed that the taking occurred on June 6, 1957. The fact that the land had been used for one purpose only, the growing of timber, did not prevent Leibacher from showing the adaptability of the land for other uses including the building and operation of fishing camps. He offered evidence going to show that the best use to which the land could be put was for the operating of fishing camps of the kind shown to be operated rather generally throughout the area.

■ In cases of this kind, the narrow issue for the jury's determination, the amount of the award to the landowners, should not be broadened nor the verdict of the jury influenced by the interjection of immaterial matters, especially matters calculated to be prejudicial. Whether or not the property is necessary or advisable, or whether more property is taken than necessary, and whether or not it is ever paid for or who pays for it, are not questions for the jury to consider nor to be brought before it in any way.

In the case now before us we can conceive of no reason for placing before the jury the fact that at the time the condemnation proceeding was commenced, Southern Electric's total authorized capital stock was $2,000,000; that on towit August 17, 1956, Southern Electric sold for a cash consideration of $100 per share a total of 2500 shares of common stock to Alabama Power Company and 2500 shares of such stock to Georgia Power Company and had previously paid to Alabama Property Company (its agent for acquiring land options, etc.), over $200,000 for acquisition of plant sites and coal reserves; that a capital expenditure budget aggregating $1,324,349 had been adopted. Nor do we see why the jury should have been advised as it was on the cross-examination of Southern Electric's secretary, the connection between Alabama Power Company, Georgia Power Company, Alabama Property Company, Southern Services, Inc., Southern Electric and The Southern Company. Yet those matters came to the jury's attention as a result of the requirement that Southern Electric present before the jury its evidence going

to show its right to condemn. Most of the facts referred to above were included in documents which Southern Electric was called upon to produce in order to show its right to condemn.

Some of the documents were read to the jury by counsel for Leibacher with the consent of counsel for Southern Electric. Such consent is said to constitute a waiver of any error in requiring such evidence to be presented before the jury. We cannot agree. The documents were, in effect, required to be placed in evidence before the jury and Southern Electric would have been in a difficult position with the jury if its counsel had refused the request made upon them by counsel for Leibacher for the contents of the documents to be read to the jury.

It is argued by appellee that because the amount of the award was well within the range of the evidence, no injury can be said to have resulted to appellant as a result of such matters being introduced in evidence at the jury trial.

The award of $11,000 was less than the values fixed by Leibacher and his witnesses. Leibacher testified that the fair market value of his 44 acres of land was $22,000. The values fixed by his other witnesses ranged from $35,000 down to $15,400.

On the other hand, the jury's award was considerably in excess of the highest estimate of value placed on the Leibacher tract by appellant's witnesses, $4,400.

The appellant was naturally interested in getting as large an award for his land as possible, land which he did not seem anxious to lose. All of his witnesses except one owned property which was subject to condemnation by Southern Electric for the purpose of building the same generating plant. The witness who was the one exception estimated the value of the Leibacher lands at $35,000. As to this witness we have some doubt as to the correctness of the court's ruling that he was shown to

possess sufficient familiarity with the land and its value to express an opinion as to its value.

In view of the nature of the opinion evidence offered by Leibacher concerning the value of his land we are unable to affirm that the evidence going to show the size, ownership, financial worth and corporate affiliation of Southern Electric and the amount of money set aside for obtaining its property was without injury to appellant.

██ This court recognizes what every trial lawyer knows, i. e., that it is highly prejudicial to a defendant for the members of a jury to be improperly informed that a defendant is really a very wealthy person or that some wealthy corporation would have to pay the verdict rather than defendant, and thus invite them to be liberal with someone else's money. We think the same is true in a case of this kind.

██ When a case is tried by a jury, the members of the jury are entitled to receive for their consideration the relevant evidence offered by all the parties. They should not receive any irrelevant or illegal evidence.

The evidence in regard to the right to condemn was entirely irrelevant to the issue for the jury's determination, namely, the amount of the just compensation to be awarded Leibacher. As we have indicated, we cannot say it was not prejudicial. True it was introduced by appellant or was elicited from appellant's secretary on cross-examination. But it was placed before the jury only because of the requirement of the trial court that evidence concerning appellant's right to condemn had to be presented before the jury which was to fix the amount of the award. We are constrained to the conclusion that appellant's assignments of error 1 and 2 are well taken and that the judgment of the trial court must be reversed.

██ Dewey Bolton, a witness for the plaintiff, testified that in his opinion the

reasonable market value of the condemned lands was $3,300. On cross-examination he was permitted to say without objection that in fixing that value he had not taken into consideration any taxes the property owner might have to pay to the Federal government as a result of the sale of the property.

On redirect-examination counsel for Southern Electric asked Bolton the following question: "Q. Mr. Bolton, Mr. Bainbridge asked you if you took into consideration how much tax Mr. Leibacher would have to pay on what he received from this property, did you take into consideration he bought it for $1200.00?" Leibacher's objection to this question was sustained and that action of the court is made the basis of assignment of error No. 3. The trial court did not commit reversible error in this ruling. If not objectionable otherwise, the question to which objection was sustained assumed a fact not in evidence, the price which Leibacher had paid for the land. Brannan v. Henry, 142 Ala. 698, 39 So. 92; Alabama Lumber Co. v. Cross, 152 Ala. 562, 44 So. 563; Allen v. State, 26 Ala.App. 218, 155 So. 894; Cox v. State, 25 Ala.App. 38, 140 So. 617. The rule that irrelevant, incompetent and illegal evidence may be admitted without error to rebut evidence of like character does not operate to put the trial court in error in sustaining the objection to the question asked the witness Bolton on redirect-examination. See Bank of Phoenix City v. Taylor, 196 Ala. 665, 72 So. 264.

Sammy McEwen, a witness for Southern Electric, testified as to the fair or reasonable market value of the suit property. On cross-examination he stated that he had no interest in the case; that he had no interest in the Alabama Power Company or in the Southern Electric Generating Company although he had sold them property. Thereupon counsel for Leibacher on further cross-examination asked the following question: "What property did you sell them?" Southern Electric's objection to this question was overruled and such action of the court is the foundation of assignment of error No. 4. In regard to this assignment of error, we think it sufficient to say that the question was not answered. See Gilliland v. Dobbs, 234 Ala. 364, 174 So. 784; Allison v. Owens, 248 Ala. 412, 27 So.2d 785; Dorsey Trailers, Inc. v. Foreman, 260 Ala. 141, 69 So.2d 459.

The trial court admitted in evidence the deed under which Leibacher obtained title to the suit property and thereafter on Leibacher's motion, the deed was excluded, after it was made known to the court that Leibacher admitted ownership of the property. The exclusion of the deed is made the basis of assignment of error No. 5. Since Leibacher admitted ownership of the lands in question, we can see no prejudicial error in excluding the deed which had been admitted originally in connection with the duty on Southern Electric to show its right to condemn the lands which were alleged to belong to Leibacher. Hogg v. Frazier, 211 Ala. 218, 100 So. 95; Stewart v. Weaver, 264 Ala. 286, 87 So. 2d 548.

The trial court overruled appellant's objection to the following question asked Leibacher's witness David A. Denham on direct examination: "Mr. Denham, do you know what fishing camp sites along the water, or may be off the water of the Coosa River, anywhere in that area, were selling for the last several years?" This question was never answered and the court's ruling on the objection thereto cannot be said to constitute reversible error. We hold, therefore, there is no merit in assignment of error No. 6. There was no objection to the question: "What were lots selling for?", which the witness answered, "Lots would sell for $500.00 or better than that."

In view of another trial we call attention to the fact that in the recent case of Davis v. Reid, 264 Ala. 560, 88 So.2d 857, it was said that Alabama has adopted the general or majority rule, known as the "Massachusetts" Rule, which is to the effect that in cases involving the sale of lands, evidence as to the sales price of other

lands which were sold voluntarily is admissible, if the conditions surrounding the two tracts of land are similar and if the sale was neither too remote in point of time nor of such a character as to indicate that it did not represent the true value of the property. See 118 A.L.R. 869, 870. The rule is otherwise as to forced sales. See Housing Authority of Phenix City v. Harris, 241 Ala. 419, 3 So.2d 54; Pickens County v. Jordan, 239 Ala. 589, 196 So. 121; Blount County v. McPherson, supra.

In making the foregoing observation in regard to voluntary sales, we do not want to be understood as holding that the record in this case shows such similarity between the land sold and that condemned as to justify the admission over timely and proper objection of evidence as to the sale price of the lots sold for camp sites in the general area of the condemned property. We recognize the fact that much must be left to the discretion of the trial court on the question of similarity. But here the condemned lands had not been divided into lots and, in our opinion, the evidence is otherwise scant in respect to similarity.

We call attention to the fact that the courts of some other states have held that a sale of non-platted lots cannot be used as evidence to determine the value of platted lots or vice versa, even though both parcels are in the same vicinity. Martin v. Chicago & M. Electric Ry. Co., 220 Ill. 97, 77 N.E. 86; Chicago N. S. & M. R. Co. v. Chicago Title & Trust Co., 328 Ill. 610, 160 N.E. 226; Forest Preserve Dist. of Cook County v. Chilvers, 344 Ill. 573, 176 N.E. 720; County Board of School Trustees of Macon County v. Batchelder, 7 Ill.2d 178, 130 N.E.2d 175; Vann v. State Highway Dept., 95 Ga.App. 243, 97 S.E.2d 550; and see State Roads Commission of Maryland v. Wood, Court of Appeals of Maryland, 207 Md. 369, 114 A.2d 636; Forest Preserve District of Cook County v. Wing, 305 Ill. 194, 137 N.E. 139.

Mrs. Mabel C. Denham, the wife of David A. Denham, was also called as a witness on behalf of the defendant. During the course of the examination of this witness the following transpired:

"Q. From your knowledge of land values up in there and camp sites, I will ask you to state whether or not —I will ask you to state, in your judgment, what would be the reasonable market value of the Leibacher property for commercial camp site property?

"Mr. Harrison: Your Honor, we are going to object on the grounds she is not shown to be qualified.

"Mr. Bingham: Nor, has there been a showing it has been subdivided or set up into camp sites.

"The Court: Overrule the objection and give you an exception.

"Q. All right, what would be the reasonable market value of it as of June the 11th this year? A. I would say the lots are worth at least $500.00 a piece.

"Mr. Bingham: We object, Your Honor, and move to exclude the valuation of the lots.

"The Court: That answer with reference to lots is excluded and the Court sustains the objection."

Assignment of error No. 8 is to the effect that the trial court erred in overruling the objection to the first question set out above which was not answered. The answer to the second question was excluded. Reversible error is not made to appear by this assignment of error. Central of Georgia Ry. Co. v. Grover, 218 Ala. 290, 118 So. 506; Alabama Power Co. v. Edwards, 219 Ala. 162, 121 So. 543; Reese v. Mackentepe, 224 Ala. 372, 140 So. 550.

In its brief appellant has argued assignment of error No. 8 with assignments of error No. 12 and 18. We doubt if these assignments of error are sufficiently re-

lated to escape the rule that where unrelated assignments of error are argued together and one is without merit, the others will not be considered. Thompson v. State, 267 Ala. 22, 99 So.2d 198, and cases cited. However, we find no merit in either of the last mentioned assignments of error.

Assignment of error No. 12 is in substance that the trial court erred in overruling appellant's objection to the following question asked appellee's witness Lance on direct examination: "What in your judgment, was that land worth per acre, over a whole, the reasonable market value, on June 6, 1957?" The question in this form was never answered. See the Gilliland, Allison and Dorsey Trailer cases, supra. In commenting on assignment of error No. 12 in this manner, we do not want to be understood as indicating that the objection to the question was erroneously overruled.

 Assignment of error No. 18 reads: "That the trial court erred in permitting appellee's witness, Mr. Lance, to give his opinion as to the value of appellee's property when divided into lots when there was no evidence that appellee's property had ever been divided into lots, to which action of the trial court appellant duly excepted. (Tr. pp. 182–185)." This assignment of error is too general. Jackson Lumber Co. v. Butler, 244 Ala. 348, 13 So.2d 294; Hall v. Pearce, 209 Ala. 397, 96 So. 608. We are unable to find on the pages of the record referred to in the assignment of error where the witness expressed an opinion "as to the value of the appellee's property when divided into lots."

The refusal of the trial court to permit Mrs. Denham to testify as to how much money she and her husband had paid for the land which they purchased across the creek from the suit property is made the basis of assignment of error No. 9.

 Mrs. Denham testified on direct examination that in her opinion Leibacher's land was worth $25,000. She also testified as to the development of the property which she and her husband had owned across the creek from the Leibacher property and which was shown to have been condemned. She gave no testimony which, in our opinion, entitled Southern Electric to show the amount which she and her husband had paid for their property. Appellant cites no authority in support of its insistence other than cases which are to the effect that on cross-examination a party may make such interrogation of a witness as would tend to test his interest, bias or prejudice or to impeach the accuracy of his testimony. In any event much must be left to the discretion of the court in the matter of cross-examination. Pryor v. Limestone County, 230 Ala. 295, 160 So. 700. We find no reversible error in the ruling as to the cross-examination of Mrs. Denham.

 J. M. Walton, a witness for Leibacher, was permitted to express the opinion that the reasonable market value of the Leibacher land at the time of taking was $35,000. As we have heretofore indicated, we are not satisfied from a reading of his testimony that he possessed sufficient qualifications to give opinion evidence as to the value of the property. However, the reception of opinion evidence as to the value of the realty and the sufficiency of the foundation therefor are matters largely addressed to the discretion of the trial court and we are unwilling to say that the trial court committed reversible error in permitting Walton to express his opinion as to the value of the property. We hold that assignments of error No. 10 and No. 11 do not present cause for reversal.

 On cross-examination of Leibacher, Southern Electric sought to show the price which he paid for the suit property when he bought it in April of 1947. The trial court sustained an objection to the question seeking to bring out that fact and this action of the trial court is made the basis of assignment of error No. 13.

In Thornton v. City of Birmingham, 250 Ala. 651, 35 So.2d 545, 546, 7 A.L.R.2d 773, it is said:

"The general rule, supported by overwhelming authority, is that evidence of the price paid by the owner for the property sought to be condemned is admissible as tending to illustrate or bearing probatively on its market value, unless the sale was too remote in point of time from the condemnation proceedings as to afford no fair criterion of present value, or if otherwise shown to be without probative force, as where the sale was not a voluntary one or where other special considerations conduced the sale at other than the true market value."

On the question of the remoteness of time of the purchase of the property by the owner, much is left to the discretion of the trial court. Thornton v. City of Birmingham, supra; and cases cited. See Davis v. Reid, 264 Ala. 560, 88 So.2d 857.

We are unwilling to say that the trial court abused its discretion in refusing to permit Southern Electric to show the price Leibacher paid for the land approximately ten years prior to the time of taking. Leibacher received his deed on May 3, 1947, and as we have heretofore pointed out, the parties agreed that for the purpose of fixing value the time of taking is to be considered as June 6, 1957.

Assignments of error No. 14 and 15 relate to the trial court's action in overruling appellant's objection to questions propounded its witness Bolton on cross-examination as to whether one of the attorneys for appellant had told the witness the valuation which the appraiser for appellant had placed on the Leibacher lands. The answers of the witness to these questions were to the effect that he had no recollection of any such information from the attorney. We are unable to see any possible injury to appellant from the rulings made the basis of these assignments of error.

Assignment of error No. 16 is to the effect that the trial court erred to a reversal in overruling the plaintiff's objection to the following question asked the witness Bolton on cross-examination: "Now, do you know whether or not that land was adaptable as land for a site for a steam electric generating plant?" After the objection was overruled, the witness replied, "Well, I would say I don't know because I never have built a generating plant." An owner is not entitled to show the valuation of the property as enhanced by the contemplated improvement. Housing Authority of Birmingham District v. Title Guarantee Loan & Trust Co., 243 Ala. 157, 8 So.2d 835. The question here under consideration did not seek to elicit such information and certain it is that the answer gave no such estimate of value. We are unable to see any prejudice to the appellant by the ruling of the court made the basis of assignment of error No. 16.

Assignments of error 7 and 17 are expressly waived.

Because of the error noted in assignments of error 1 and 2 the judgment of the trial court is reversed.

Reversed and remanded.

LIVINGSTON, C. J., and STAKELY and MERRILL, JJ., concur.